UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| KIRVEE J. WOODARD | : | DOCKET NO. 2:07-cv-0990 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits claimed under §§ 216(i) and 223 of the Social Security Act (Sections 416 and 423 of Title 42 of the U.S. Code). This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff in this case, Kirvee J. Woodard, filed an application for disability insurance benefits on July 15, 2003. Transcript at 16. On initial determination, plaintiff's claim was denied. *Id.* As a result, plaintiff sought an administrative hearing. *Id.* A hearing was held on May 8, 2006. *Id.* At the hearing, plaintiff testified without the assistance of counsel. *Id*. Also appearing and testifying were George W. Weilepp, an impartial medical expert, Robert D. Cox, an impartial vocational expert, and Cheryl Woodard, plaintiff's spouse. *Id.*

On May 26, 2006, the administrative law judge (ALJ) rendered a decision finding that plaintiff is not disabled within the meaning of the Social Security Act. *Id.* at 16-22. Plaintiff requested review of the ALJ's decision before the appeals council, but the council denied the

request on December 15, 2006. *Id.* at 4-6. Thus, plaintiff filed the above-captioned civil action seeking this court's review.

## **STANDARD OF REVIEW**

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts

of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## **DISCUSSION**

The burden of proving that he or she suffers from a disability[1] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can

---

[1] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[2] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff is not disabled at step five of the sequential analysis. Transcript at 20-21. Specifically, the ALJ found that plaintiff retains a RFC allowing him to perform "light work characterized by the ability to lift and carry up to 10 pounds frequently and

4

35 pounds occasionally." *Id.* at 19. The ALJ found that plaintiff could "stand for up to 90 minutes at one time for up to 6 hours in an 8-hour workday." *Id.* The ALJ found that plaintiff lacks the ability "to work at heights or climb ladders," "to kneel, crawl, or squat frequently," "to perform fine fingering," "to work in extreme cold or around industrial vibration," or to "perform over-the-road or hazardous commercial driving or operation of hazardous equipment." *Id.*

The ALJ then considered,

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18.[3] However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as small products assembler [Dictionary of Occupational Titles (D.O.T.)] 739.687-030, fast food worker [D.O.T.] 311.472-010, shipping and receiving weigher [D.O.T. 222.387-074[4]], and laundry press operator [D.O.T.] 363.685-026. . . . The expert indicated that in the Lake Charles, Louisiana (regional) area there are 4,600 light unskilled jobs in 45 categories, which the undersigned finds is a significant number of jobs in the regional and national economy. The vocational expert testified that these jobs had in his past experience been successfully placed with personnel of a residual functional capacity represented by the claimant.

---

[3] The Medical Vocational Guidelines may be used to determine that occupations performable by a claimant exist in the national economy only if the ALJ finds that a claimant has the exertional RFC to perform all of the strength demands required by work at a given level of exertion and that no non-exertional limitations exist for the claimant. Social Security Rulings 83-10, 83-11; *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

[4] It appears that there was a transcription error. In the ALJ's decision, this job was erroneously matched to D.O.T. section 222.387-014, rather than 222.387-074. Transcript at 21.

Transcript at 21. Concerning the above, the ALJ found that "the vocational expert's testimony is consistent with the Dictionary of Occupational Titles . . . ." *Id.* The ALJ continued:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

*Id.*

Plaintiff asserts that the vocational expert testimony relied on by the ALJ is facially unreliable because it conflicts with the D.O.T. Doc. 10, at 6-10. Specifically, plaintiff asserts that the jobs cited by the vocational expert require fine fingering, a task beyond his RFC. *Id.* Additionally, plaintiff asserts that the ALJ relied on vocational expert testimony that the jobs were "simple one or two-step jobs" in finding that plaintiff could perform them. *Id.*

The Commissioner, in response to plaintiff's arguments, notes that the D.O.T. does not define the jobs cited by the vocational expert as requiring fine finger detail. Doc. 11, at 4-5. The Commissioner further notes that the ALJ specifically confirmed with the vocational expert that the fine fingering limitation would not limit his ability to perform the jobs. *Id.* (citing Transcript at 151). Additionally, the Commissioner notes that although the ALJ asked the vocational expert, whether the jobs would be "one or two step jobs," the hypothetical relied on by the ALJ depended on an RFC that contained no reasoning restrictions. *Id.* at 7 (citing Transcript at 151).

According to the D.O.T., a small products assembler:

> Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers,

6

or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.

D.O.T. 739.687-030. The finger dexterity requirement is: "Level 3 – Middle 1/3 of the Population." *Id.*

According to the D.O.T., a fast food worker:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

D.O.T. 295.367-026. The finger dexterity requirement associated with this job is also Level 3. *Id.*

A shipping and receiving weigher:

> Weighs and records weight of filled containers, cargo of loaded vehicles, or rolls of materials, such as cotton, sugarcane, paper, cloth, plastic, and tobacco, to keep receiving and shipping records: Reads scale dial to ascertain weight and records weight on ticket, product, or material; or subtracts tare from gross weight to obtain net weight of product or material; or inserts ticket into automatic scale recorder that prints weight on ticket. May convey objects to scale, using handtruck, and lift objects onto scale. May record information on weight ticket, such as grade and yardage. May be designated according to item weighed as Cloth Weigher (knitting); Garment Weigher (knitting); Roll Weigher (paper & pulp; paper goods; plastics-synth.); Tobacco Weigher (clerical). May signal YARD ENGINEER (r.r. trans.) 910.363-018 to move

7

cars on and off scale and be designated Scaler (r.r. trans.). May weigh only incoming or outgoing materials or products and be designated Receiving Weigher (clerical); Shipping Weigher (clerical).

D.O.T. 222.387-074. The finger dexterity requirement is described as "Level 4 – Lowest 1/3 [of the Population,] Excluding Bottom 10%." *Id.*

Finally, according to the D.O.T. a laundry press operator, such as a shirt presser:

> Performs any combination of following tasks in conjunction with other workers to finish and fold shirts: Places collar, cuffs, and yoke on curved, padded forms of pressing machine. Pushes button or moves lever to lower pressing head and press shirt parts. Pulls sleeves of shirt over heated form to finish, or pulls sleeve over padded forms and presses button to insert forms into cabinet to iron sleeves. Lays back of shirt on buck (table) of pressing machine. Depresses pedal or pushes button to lower pressing head onto shirt. Drapes shirt over form and pushes buttons to rotate form into steam cabinet to press shirt bosom. Folds finished shirts around piece of cardboard on folding board or on folding machine. Finishes detached collars by feeding collars into equipment for dampening, shaping, and pressing. May be designated according to part of garment ironed as Body Presser (laundry & rel.); Bosom Presser (laundry & rel.); Shirt-Collar-And-Cuff Presser (laundry & rel.); Shirt Folder (laundry & rel.) II; Yoke Presser (laundry & rel.).

D.O.T. 363.685-026. The finger dexterity requirement for this job is also Level 4. *Id.*

Based on the descriptions set out above, the court observes that the Commissioner is correct that these jobs do not specifically require "fine fingering." Fingering is not defined in the D.O.T. and the Department of Labor's "Selected Characteristics of Occupations Defined in the Revised Dictionary or Occupational Titles" (S.C.O.D.O.T.) defines fingering in general terms as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." S.C.O.D.O.T., Appendix C. The court observes that plaintiff's

8

RFC does not prevent him from doing any "fingering," but instead limits him to fingering that is not "fine." Transcript at 19.

Even were this court to find that an inferential conflict between the vocational expert's testimony and the D.O.T. exists, the Fifth Circuit Court of Appeal decision in *Carey v. Apfel*, 230 F.3d 131 (2000) instructs that the court may not substitute its judgment for the ALJ's. In *Carey*, the ALJ posed a hypothetical question to the vocational expert that included all limitations identified by the plaintiff and objectively supported by the medical evidence. 230 F.3d at 145. The ALJ observed that plaintiff retained a RFC to perform light, unskilled work, limited by an inability to use his left arm and hand, the need to have a sit-stand option, and the need to work in a climate controlled environment. *Id.* In response to the hypothetical question, the ALJ testified that plaintiff could perform the jobs of cashier and ticket seller despite the additional impairments identified by the ALJ. *Id.* On appeal, the plaintiff asserted that there was a conflict between the D.O.T. and the testimony of the vocational expert with regard to whether plaintiff could perform these jobs without the use of one hand or arm. *Id.*

The appeal court observed: "When, as here, the claimant suffers from additional limitations that make the Medical-Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence. This [c]ourt has recognized that the D.O.T. is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Id.* (internal citations omitted). The appeal court quoted *Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986), noting "*The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular*

*occupation, including working conditions and the attributes and skills needed.*" *Id.* (emphasis added).

Reviewing the specific requirements of the jobs, the appeal court observed that although some ability to hand and finger things would be required, the court could not infer, as plaintiff would have it, that the jobs require manual dexterity with not one, but two hands. *Id.* at 146. The court also found that any conflict that could be inferred was "greatly mitigated by the vocational expert's specific testimony that [plaintiff] could perform the identified jobs" despite his impairments. *Id.* Finally, the court observed that plaintiff "basically contends that the vocational expert's testimony that he could perform certain jobs requiring manual dexterity . . . should have been explored further, when [plaintiff] himself failed to do so in the administrative hearing." *Id.*

In light of these considerations, the court concluded:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. As the facts of this case demonstrate, all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. . . . Certainly, a vocational expert's erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony. Likewise, an explained discrepancy between the ALJ's determination of the claimant's residual functional capacity and the vocational expert's testimony that the claimant can perform certain identified jobs with inconsistent skill requirements may require remand for further exploration. But in this case, the vocational expert's clear

> and unchallenged testimony that Carey could perform the identified jobs . . . is adequate, in the context of this record as a whole, to support the ALJ's determination that Carey could perform other available work.

*Id.* at 146-47.

This court observes that the circumstances of the instant case are sufficiently similar to those of *Carey* to support a finding that substantial evidence supports the ALJ's decision that plaintiff could perform these jobs with a RFC that precludes him from "fine fingering." Specifically, as in *Carey*, the jobs identified by the vocational expert do not facially conflict with the RFC assigned plaintiff. The ALJ included all of the limitations associated with plaintiff's RFC in the adopted hypothetical. Transcript at 21, 151-52. The vocational expert specifically testified that no conflicts between these jobs and plaintiff's RFC prevent him from performing them, including specifically, the fine fingering limitation. *Id*. at 152. Although plaintiff was not represented by counsel (despite the ALJ's offer to continue the case so that plaintiff could secure representation [Transcript at 127-28]), he was given the opportunity to ask the vocational expert any questions with regard to the finding that he could perform these jobs although he is incapable of fine fingering. *Id.* at 155. He declined to do so. *Id.*

Additionally, with regard to plaintiff's reasoning capacity argument, the court notes that plaintiff's mental capacity is not limited in his RFC. *Id.* at 20. Nor did the hypothetical question posed to the vocational expert include such a limitation. *Id.* at 153. Thus, although the ALJ may have also asked the vocational expert whether the jobs described were non-complex and could be performed by someone distracted by pain, the vocational expert's testimony on the point is irrelevant as it was not ultimately determinative of the ALJ's decision in this case. *Id.* at 16-22. The ALJ noted in his decision that plaintiff's medically determinable impairments could be

11

expected to produce the alleged symptoms, including pain, but not at the severity claimed by plaintiff. *Id.* at 20. Such a credibility determination is well within the discretion of the ALJ. *Brown v. Apfel*, 192 F.3d 492, 500 (1999). Further, the ALJ noted that "[i]f an impairment can reasonably be controlled by medication or treatment, it cannot serve as a basis for a finding of disability." Transcript at 20 (citing 20 C.F.R. § 404.1530). The ALJ noted that plaintiff himself reported that medications could ease his pain. *Id.* (citing Transcript at 53-54). The ALJ may rely on portions of a vocational expert's testimony without adopting it in full. *Morris v. Bowen*, 864 F.2d 333, 336 (1988). In the instant case, the ALJ did just that. He relied on the vocational expert's response to the hypothetical question that corresponded to the RFC that he assessed for plaintiff. Transcript at 20, 53. This is what an ALJ is required to do. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, the court, must conclude that substantial evidence supported the ALJ's determination of plaintiff's RFC and his finding that plaintiff is not disabled. *Carey*, 230 F.3d at 146-47; *Brown*, 192 F.3d at 500; *Morris*, 864 F.2d at 336; *Bowling*, 36 F.3d at 436.

For these reasons,

IT IS RECOMMENDED that the Commissioner's unfavorable determination be AFFIRMED.

Accordingly, it is RECOMMENDED that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of September, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE